UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

TEAM SERVICES, INC.,
a New Jersey Corporation,

    Plaintiff,

CASE NO.: 1:21-cv-21026

v.

SECURITAS ELECTRONIC SECURITY, INC.,
a Delaware corporation.

    Defendants.
_____/

## COMPLAINT

Plaintiff, TEAM SERVICES, INC. ("TEAM"), by and through its undersigned counsel, hereby sues Defendants, SECURITAS ELECTRONIC SECURITY, INC. ("SES"), and alleges as follows:

### JURISDICTION, PARTIES AND VENUE

1. This is an action for damages in excess of $75,000.00.

2. Plaintiff, TEAM, is a New Jersey corporation with its principal place of business located at 45 Sammis Rd #4820, Sussex, New Jersey 07461.

3. Defendant SES is a Delaware corporation with its registered office located at 3800 Tabs Drive, Uniontown, Ohio 44685.

4. SES is subject to personal jurisdiction in the State of Florida because, among other things, SES, at all times material, operated, conducted, engaged in and carried on business or business venture in this state, had an office or agency in this state, committed a tortious act within

this state, breached the underlying contract within this state, and/or caused damages to Plaintiff while engaging in solicitation or service activities within this state.

5. Moreover, at all times material SES engaged in substantial and not isolated activity within the State of Florida.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), since the Defendant, as an entity, at all times material was subject to the court's personal jurisdiction in this District with respect to the action in question and therefore is considered a resident of this State. Moreover, at all times material, Defendant maintained business operations in this District, one or more of Plaintiff's causes of action in this case accrued in this District, and/or the Defendant has an agent or representative in this District.

## FACTS

7. TEAM has been a nationwide service provider for over twenty-five (25) years, offering a wide variety of services such as, but not limited to, preventative maintenance for banking and financial services equipment.

8. In that capacity, and at all times relevant, TEAM provided a network of technicians that serviced bank vaults and electronic security systems, who specialized in servicing critical equipment that helped branches keep costs low through risk mitigation, quick response times, and improved customer services.

9. Prior to its relationship with SES, TEAM was subcontracted by SES' predecessor, Diebold Electronic Security, to provide preventative maintenance services to bank branches nationwide.

10. After the merger between Diebold and SES on or about October 2015, SES continued to subcontract TEAM to provide such preventative services, among others, to SES' customers.

11. SES engaged TEAM's services, pursuant to the terms of a Subcontractor Master Agreement, as amended from time to time. Attached to this Complaint as Exhibit "A," is the latest Subcontractor Master Agreement governing the terms between SES and TEAMS.

12. In addition to the Subcontractor Agreement, SES and TEAM would supplement their service terms pursuant to a statement of work executed annually, upon confirmation by SES of TEAM's engagement for the upcoming year. The statement of works would define specific parameters and benchmarks that TEAM was required to meet, among other terms, during the course of the year. Please see attached as Exhibits "B" and "C" the Statement of Work for the years 2018 and 2019.

13. As it was customary from previous years, towards the end of the year 2018, TEAM submitted to SES its proposal and bid for services for the following year.

14. Also common from their prior history, TEAM submitted to SES a rate sheet for the various services offered, including for preventative maintenance services. TEAM provided SES a proposal with the exact same rates it had proposed SES the prior year and was already providing services to all current SES accounts or retail bank locations it serviced at the time.

15. SES accepted TEAM's proposal and bid for the year 2019 and entered into the Statement of Work effective January 1, 2019 (the "2019 SOW").

16. After commencement of the work under the 2019 SOW, SES changed its payment terms on numerous occasions, often without prior consent or awareness of these changes from TEAMS.

17. In particular, but without limitation, SES changed the net terms for when payments were due, often paying at irregular times, and also modified the rates applicable to the preventative maintenance services contracted for and performed by TEAM on behalf of SES to several bank branches.

18. Upon noticing that its invoices were being paid late and short, TEAM began objecting to the payments and notifying SES of the error.

19. At first SES asserted that it would investigate the discrepancies in payment and endeavor to correct them.

20. Later, as TEAM insisted in resolution of the pending balances that kept increasing, SES demanded that TEAM change its rates ex post facto, to nearly half of the agreed rate amounts.

21. SES later claimed that TEAM purportedly "agreed" to the reduced rates at the time of submitting its bid for the 2019 SOW and thus, the balances due were as a result of "billing errors" by TEAM. However, at all times material, TEAM never agreed to any purported reduced rates.

22. In fact, when SES approached TEAM for an undefined reduction in rates at the time TEAM submitted its bid for the year 2019, TEAM responded that it could only consider a reduced or discounted pricing if SES guaranteed or offered TEAM a larger footprint or number of accounts to service. SES never responded to TEAM, nor provided TEAM with a larger footprint of accounts. To the contrary, for the year 2019, SES reduced TEAM's footprint from about 1,000 accounts to approximately 335 locations. Moreover, TEAM never provided any offer on any such "reduced rates" SES claimed to have accepted.

23. SES has no justifiable reason to reduce TEAM's rates or claim any error in interpretation of the contract. The history and conduct of the parties demonstrates that TEAM and

SES have engaged in very similar or identical terms in the past, and in particular the pricing offered and agreed to for the years of 2018 and 2019 was the same.

24. After several months of good faith inquiries and attempts by TEAM to obtain resolution, SES has refused to pay the balances due for services performed by TEAM on behalf of SES.

25. Moreover, knowing that at the time TEAM provided services to SES almost exclusively, was dependent on the relationship, and that the Subcontractor Master Agreement and 2019 SOW had aggressive chargebacks and fees provisions if TEAM did not continue to deliver timely service, SES used it superior position to force TEAM to continue providing services to its detriment and despite having objections to SES' self-proclaimed payment policies.

26. Furthermore, SES enforced these chargebacks and fees provisions in the Contract at times that SES own breach made TEAM's compliance impossible and/or unduly burdensome.

27. Ultimately, due to the growing dispute, SES unilaterally and abruptly terminated the Subcontractor Master Agreement in violation of the notice and termination provisions of said agreement.

28. Plaintiff has made written demand for payment to Defendant, and all conditions precedent have either been satisfied or waived.

29. Plaintiff has been forced to retain the undersigned and is obligated to pay the reasonable attorney's fees and costs incurred in this action, and thus is entitled to recover the same pursuant to the terms of the Subcontractor Master Agreement.

## COUNT I – BREACH OF CONTRACT

30. Plaintiff re-alleges paragraphs 1 through 28, as if fully set forth herein.

31. This is an action for damages based on a breach of contract.

32. Plaintiff is entitled to relief where [1] a valid contract (i.e. the Subcontractor Master Agreement and 2019 SOW) existed between Plaintiff and Defendant; [2] there was a material breach of that contract; and [3] Plaintiff suffered damages as a result of that breach.

33. Defendant is in breach of the parties' contractual agreements, where Defendant failed to make payments when and in the amounts due.

34. The breach is material, and Plaintiff has suffered damages as a result of the breach, in the amounts due.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendant, together with an award of attorneys' fees, costs, and such further relief this Court deems just.

## COUNT II — FRAUD IN THE INDUCEMENT

35. Plaintiff re-alleges paragraphs 1 through 28, as if fully set forth herein.

36. This is an action for damages based on fraud in the inducement.

37. As per previous years, in late 2018, Plaintiff submitted its bid and proposal for services for the year 2019.

38. Said proposal for the year 2019 was the same in terms of services and rates offered by TEAM to SES, as compared to the statement of work for the year 2018. Compare Exhibits "B" and "C."

39. SES had no trouble understanding the 2018 SOW and paying the rates agreed to for preventative maintenance services.

40. Accordingly, SES cannot claim that the exact same offer and proposal for 2019 was somehow misunderstood or not agreed to.

41. Moreover, SES requested an undefined discount or reduction in rates, to which TEAM responded that it would only consider should its account footprint increase for the upcoming year of 2019.

42. SES never responded to TEAM, in fact reduced TEAM's accounts for 2019 by about one-third of what it used to be in 2018, or ever provided a counteroffer to the rates presented by TEAM in its bid. To the contrary, SES accepted TEAM's proposal and entered into the 2019 SOW for the rates demanded and billed by TEAM to SES.

43. Thereafter, upon immediate objection by TEAM of the underpaid and untimely paid invoices, SES continue to string TEAM along asserting that it would investigate the short-payment differential when it knew it had no intention on paying TEAM the full amounts owed.

44. Finally, after nearly a year of disputes, SES unilaterally and in violation of the Subcontractor Master Agreement, terminated TEAM's services and refused to pay the balance due.

45. SES, through its representatives, knew or should have known that TEAM was entering into the 2019 SOW in reliance of the prices and rates proposed in its bid, which were the same as the prior year's. SES knew or should have known that for TEAM to entertain any price reductions, it would only be in consideration of an increase in accounts to service.

46. Accordingly, SES knew or should have known that TEAM would not have entered into the 2019 SOW or the purported reduced rates imposed by SES should TEAM had known SES was reducing TEAM's footprint.

47. The above-described misrepresentations or omissions of material fact by SES were false, deliberate, and intentional. SES intended that TEAM be induced by the above-described misrepresentation or omissions of material fact by SES to enter into the 2019 SOW and begin

providing services to SES' customers, and to continue providing services to SES through most of 2019 with the hopes that SES was going to get current on the balance due.

48.     TEAM reasonably and justifiably relied upon the representations it made in its bid to SES, the parties prior history working together, and that SES accepted TEAM's bid as submitted and offered TEAM a contract upon those rates.

49.     But for the misrepresentations or omission of material facts made, Plaintiff would not have entered into the 2019 SOW, or continued to provide services for as long as they did during the year 2019.

50.     As a direct and proximate result of Plaintiff's justifiable and reasonable reliance on Defendant's misrepresentations or omissions, Plaintiff has been and continues to be damaged.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against Defendant, together with an award of attorneys' fees, costs, and such further relief this Court deems just and proper.

## COUNT III —FRADULENT MISREPRESENTATION

51.     Plaintiff re-alleges paragraphs 1 through 28 and 34 through 49, as if fully set forth herein.

52.     This is an action for damages based on fraudulent misrepresentation.

53.     Plaintiff and Defendant entered into the 2019 SOW pursuant to the rates submitted by TEAM in its bid and proposal in late 2018, for services for the year 2019.

54.     Said proposal for the year 2019 was the same in terms of services and rates offered by TEAM to SES, as compared to the statement of work for the year 2018. Compare Exhibits "B" and "C."

55. SES had no trouble understanding the 2018 SOW and paying on the rates agreed to for preventative maintenance services.

56. Accordingly, SES cannot claim that the exact same offer and proposal for 2019 was somehow misunderstood or not agreed to. To the contrary, SES knowingly accepted TEAM's proposal and entered into the 2019 SOW for the rates demanded and billed by TEAM to SES.

57. Thereafter, on or about February 4, 2019, Thomas Merk, on behalf of SES, contacted a billing clerk at TEAM, whom Mr. Merk knew or should have known had no authority to engage in any price modifications, and demanded that she changed the prices in the invoices due before SES issued any additional payments to TEAM.

58. The billing department of TEAM caught the intent of Mr. Merk and SES, and promptly advised that any price modifications made by the billing clerk were not approved by TEAM and were only for the purposes of receiving the immediate check to be sent by SES to TEAM.

59. However, Mr. Merk and SES's misrepresentations were false, deliberate, and intentional. Specifically, Mr. Merk forced TEAM's billing clerk to change the rates being billed by TEAM according to the 2019 SOW to avoid paying the amounts due TEAM.

60. Given the pending billing dispute, Mr. Merk and SES knew or should have known that the TEAM representative would rely on his statements for the purposes of assisting TEAM collect.

61. TEAM's billing clerk reasonably and justifiably relied upon Mr. Merk's misrepresentations and changed the billing to TEAM's detriment.

62. But for the misrepresentations or omission of material facts made, Plaintiff would not have changed its billing.

63. As a direct and proximate result of Plaintiff's justifiable and reasonable reliance on Defendant's misrepresentations or omissions, Plaintiff has been and continues to be damaged.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against Defendant, together with an award of attorneys' fees, costs, and such further relief this Court deems just and proper.

**COUNT IV — VIOLATION OF OHIO'S DECEPTIVE TRADE PRACTICES ACT**

64. Plaintiff re-alleges paragraphs 1 through 28 and 34 through 62, as if fully set forth herein.

65. This is an action based on a violation of Section 4165 of the Ohio Statutes, i.e. the Ohio Deceptive Trade Practices Act.

66. As set forth fully above, Defendant knowingly and intentionally misrepresented or omitted facts to Plaintiff when it accepted and agreed to Plaintiff's proposed rates in its 2019 bid, to enter into the 2019 SOW.

67. Defendant knowingly and intentionally tendered the 2019 SOW to Plaintiff misrepresenting that it accepted Plaintiff's bid for the 2019 contract.

68. However, Defendant knew or should have known the above-described misrepresentations or omissions of material fact regarding the price modification were false when made.

69. Even after multiple objections by Plaintiff as to the amounts paid on the invoices presented, SES continued to string TEAM along asserting that it was investigating the payment discrepancy.

70. Plaintiff provided Defendant substantial amounts of services in exchange, pursuant to the agreed-upon 2019 SOW rates, as per the proposal submitted and accepted.

71. Defendant intended for Plaintiff to be induced by the above-described misrepresentations or omissions of material fact to enter into the 2019 SOW and then continue to render services during the time the pricing discrepancy was purportedly being investigated.

72. Plaintiff is a "person" within the meaning of the Ohio Deceptive and Unfair Trade Practices Act, as the term is defined in Oh. Stat. § 4165.

73. The conduct described herein constitutes "transactions" governed by the Act.

74. Defendant's conduct constitute "deceptive" trade practice within the meaning of Oh. Stat. § 4165.

75. Ohio law protects Plaintiff from those who "Cause likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services" *See* Oh. Stat. § 4165.02(A)(2).

76. As direct and proximate cause of Plaintiff's reasonable and justifiable reliance on Defendant's misrepresentations or omissions, Plaintiff was damaged.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against Defendant, together with an award of attorneys' fees, costs, and such further relief this Court deems just.

## COUNT V – UNJUST ENRICHMENT

77. Plaintiff re-alleges paragraphs 1 through 28, as if fully set forth herein.

78. This is an action for unjust enrichment in the alternative.

79. Plaintiff provided preventative maintenance services on behalf of SES to various of its customers.

80. Defendant has failed to pay the full amount due for the service provided by Plaintiff.

81. The circumstances render Defendant's retainer of money paid by its own customers to Defendant for services performed by Plaintiff under the 2019 SOW, inequitable, unless Defendant pays Plaintiff to the full contract price.

WHEREFORE, Plaintiff respectfully demands final judgment for damages against the Defendant, together with an award of attorneys' fees and costs, and such further relief this Court deems just.

## COUNT VI – ACCOUNT STATED

82. Plaintiff re-alleges paragraphs 1 through 28, as if fully set forth herein.

83. Plaintiff and Defendant entered into Subcontractor Master Agreement and 2019 SOW, wherein Defendant agreed to pay the invoiced amounts for the services rendered by Plaintiff.

84. Plaintiff rendered a statement of amounts due by Defendant, a copy being attached hereto as Exhibit "D," and said balance is due and correct.

85. Defendant made an expressed agreement to pay for said services as invoiced and has refused to do the same.

WHEREFORE, Plaintiff respectfully requests a final judgment for damages against Defendant for all amounts due, together with an award of attorneys' fees and costs, and such further relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a trial by jury of all issues so triable as of right.

Dated: March 16th, 2021.

Respectfully submitted,

*/s/Moises A. Saltiel*
Moises Saltiel, Esq.

Florida Bar Number: 109954
Matthew Carcano, Esq.
Florida Bar Number 124327
Attorney for the Plaintiff
Law Office of Moises A. Saltiel
d/b/a Saltiel Law Group
2600 Douglas Road, Suite 502
Coral Gables, Florida 33134
Phone: 305-384-3386
Fax: 786-332-6225
Email(s): service@saltiellawgroup.com
mosies@saltiellawgroup.com
matthew@saltiellawgroup.com